By the Court.—Curtis, J.
This cause was tried "before Mr. Justice Speib, and a'jury, in May, 1874. The trial occupied several days, and was submitted to the jury, May 22. The jury were out over three hours, and returned a verdict for plaintiff for two thousand three hundred and twenty-seven dollars.
The plaintiff's total claim in the action was about three thousand three hundred and thirty-six dollars. The action was to collect a policy of insurance, issued by defendants, to E. S. Candler, Jr., in July, 1868, the plaintiff having levied certain attachments upon all sums due thereon from defendant to Candler, and the main question in issue on the trial was as to the amount of loss incurred by Candler.
The evidence of the amount was conflicting, and part ■of it consisted of two account books of Candler, containing entries of the amounts of his sales, and a certain memorandum of the amount and date of an inventory taken by him, which books were produced from defendant’ s possession, having been furnished to defendant at the request of Candler, and were put in evidence by plaintiff without objection from defendant.
JohnL. Douglass, secretary of defendant, was sworn as a witness for defendant, on the trial, and testified that he was an expert book-keeper, and as to the contents of said books, which he had examined, and that he had prepared a statement from the contents of said books, which purported to show in brief the contents, *486 and the amounts, and total sales. The then counsel for defendant asked leave to submit to the jury the statement of the contents of the books so prepared by Douglass. Plaintiff’s counsel consented to such submission, on condition that he might also submit a counter-statement to the jury, which condition was refused by the then counsel for defendant, and it was understood and agreed that neither side should submit any written statements to the jury, and none was submitted, on behalf of the plaintiff. When the jury retired from the court-room to deliberate upon their verdict,, one of them, in the presence of the court, and with the consent of plaintiff’s and defendant’s counsel, received the two books, and with them a written paper not in evidence, all of which he then immediately took with-him into the jury-room.
The plaintiff’s counsel did not see or know of this written paper which was folded and pinned to one of the leaves inside of one of the books, so as not to be visible until the book was. opened.
The jury were out over three hours, and on their return to the court, the same juryman handed the two books to defendant’s counsel, when plaintiff’s counsel first saw the paper so pinned inside one of the books, and not visible until the book was opened.
The court directed the paper to be placed in the custody of the clerk. There are allusions and remarks in this paper tending to create suspicion in respect to-Candler’s good faith, and the accuracy of his accounts. The paper was put in the book by the defendant’s secretary, after the testimony had closed, and the counsel on each side had summed up.
The plaintiff’s counsel, in his affidavit, states that-two of the jury have stated to him, that they, in the jury room had read the paper in question, and he claims and charges, that the jury in this case were-improperly influenced by the defendant’s secretary.
*487 It was fully and justly conceded on the argument, that the defendant’s counsel had no complicity in the matter complained of, and that he was in no way a consenting party thereto.
The defendant’s secretary states, that he prepared the paper referred to, as a memorandum for the private use of defendant’s counsel, and at their request, and pinned it to a leaf in the book for safe keeping, after all the testimony had been closed, and argument of counsel completed, and after he had been assured by defendant’s counsel, that the books would not be submitted to the jury, and that when the books were handed to the jury, it did not occur to him that this-memorandum was in one of them.
It is apparent that if this paper was thus placed before the jury, simply by the oversight of the defendant’s secretary as claimed, it was still an improper com munication to the jury, and one for which the verdict should be set aside, unless it is shown that none of the jury read the paper, and that they were not influenced by it.
The history of the law discloses a struggle for centuries, to prevent juries from being approached by improper com munications and influences. Every expedient of human ingenuity has been thus resorted to, in order to effect decisions upon the purity and justice of which society depends for its existence.
It is undesirable to have the long trial of this case repeated, unless we arrive at the conclusion that not to set aside the verdict would establish a precedent, and sanction a transaction which would tend to impair the upright and faithful administration of justice.
The defendant alleges, that this paper thus reached the jury room by the oversight of its secretary, so that, if the verdict is in consequence set aside, it will be a result due to a negligent act on the part of the defendant.
*488 The question arises whether this paper was read by any of the jury. The juryman who carried the books into the jury-room, states in Ms affidavit, that he laid the books on the table in the room, and that they remained there during the entire deliberations of the jury, and that no one, so far as be knew or believed examined either of the books or their contents, or sa w the paper inside the small book, and that neither the paper nor its contents were alluded to in the discussion of the jury. This may be quite correct, and yet it fails to show that the paper was not seen or read by some of the jury. His affidavit simply shows that he failed to observe any of the jury reading it.
The Stenographer’s notes of a colloquy after the verdict, between the plaintiff’s counsel and the foreman of the jury, and apparently two other jurymen, are presented. One of the jurymen stated he saw the paper, but did not read it, and the foreman and another juror state it was not read by any juror. The foreman saw it.
Even if weight is attached to this conversation after the verdict, it fails to show that the paper was not read by any of the jury. It simply shows that two or tlnve of the jury stated in the presence of the others, that the paper was not read by any juror.
This evidence, upon its face, fails to establish that the paper was not read by one or more of the jury.
The paper was there before them, in the jury-room, seen by some, and perhaps by all of them, and the presumption must be, in the absence of more convincing proof to the contrary than that presented, that it was read wholly, or in part, or referred to, by some one of those who saw it.
It was competent for the defendant to offer the affidavits of the jury to sustain the verdict, by showing that the paper was not read. This the defendant has omitted to do (Dana v. Tucker, 4 John. R. 487).
*489 The ancient rule that the delivery of any paper touching the matter in issue by a party to any of the jury after they leave the bar, shall avoid the verdict, was at an early period relaxed in this State, and it is mow held, that if the jury never looked at such a paper, and were not influenced by it, that it afforded no just cause for setting aside the verdict (Hackley v. Hastie, 3 John. R. 252).
In the opinion, Bronson, J., in Wilson v. Abraham, 1 Hill, 209, after a careful consideration of several English and American cases, the principle is sustained, that a verdict should not be overturned, unless there be some reason to suspect that the irregularity may have had an influence on the final result.
The affidavits on this motion fail to show that the paper, irregularly placed before the jury, could not have had an influence on the result, but, on the contrary, it may with reason be suspected that it influenced the verdict.
There appears to be no case where the courts have sustained a verdict upon the facts appearing that are disclosed in the present application. On the other hand, the tendency is to look with distrust upon all irregularities in respect to approaching jurors during the trial of a cause, or after they have withdrawn from the bar to consider' the verdict. It has been held, that where they were approached in such a manner as might have influenced their verdict, it should be set aside, without reference to the source or motive of interference (Nesmith v. Clinton Fire Ins. Co., 8 Abb. P. R. 141 ; Reynolds v. The Champlain Trans. Co., 9 How. P. R., 14; Watertown Bank v. Mix, 51 N. Y. 558).
It is desirable to avoid any relaxation of the existing rules, and, governed by them, it is difficult to see how this verdict can be sustained. The only conclusion I have been able to arrive at is, that the verdict *490 should be set aside, with costs to plaintiff to abide the-result of the action, and a new trial ordered.
Monell, Ch. J., concurred